# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

KEVIN SUTTON,

    Plaintiff

v.

STATE OF NEVADA, *et al.*,

    Defendants.

Case No.: 3:19-cv-00268-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff, who is incarcerated within the Nevada Department of Corrections (NDOC) and housed at Lovelock Correctional Center (LCC) has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1).

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that his average monthly balance for the last six months was $8.56, and his average monthly deposits were $ 87.50.

Plaintiff's application to proceed IFP should be granted. Plaintiff is required to pay an initial partial filing fee in the amount of $ 17.50 (20 percent of $ 87.50). Thereafter, whenever his

prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## II. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Summary of Plaintiff's Complaint**

Plaintiff's complaint names as defendants: The State of Nevada, Clark County, State Psychiatrist Leonora K. Petty, and the State of Nevada's Division of Child & Family Services. (ECF No. 1-1 at 1, 2.) The events giving rise to this action took place while Plaintiff was housed at Clark County's Spring Mountain Youth Camp in February of 1996. (ECF No. 1-1 at 1.)

Plaintiff asserts that when he was a juvenile and ward of the State at Clark County's Spring Mountain Youth Center, a psychiatric evaluation was ordered and demonstrated Plaintiff suffered

from numerous serious mental disorders mandating immediate treatment. (ECF No. 1-1 at 3.) Despite the duty to provide Plaintiff adequate mental health care, Plaintiff claims the Defendants knowingly disregarded the psychiatrist's diagnosis and his psychological impairments went untreated. (*Id*.) He claims that this contributed to his being set on a course of self-destruction, which could have been changed if he had received treatment. (*Id*.)

Specifically, Plaintiff alleges that in January of 1996, he was a 17-year old juvenile and ward of the State, in custody of Clark County at the Spring Mountain Youth Camp. (*Id*. at 4-5.) At that time, he had a violent episode involving another juvenile which resulted in Plaintiff hearing voices instructing him to "kill all the other juveniles present." Plaintiff alleges that he attempted to "dissolve" the voices in his head, but this was ineffective and launched Plaintiff into a horrendous rage. This triggered the process for the Clark County Juvenile Court to order an expedited psychiatric evaluation. (*Id*. at 5.)

In February of 1996, while still in the custody of the Spring Mountain Youth Center, Plaintiff was transported to defendant Dr. Petty's office to undergo the evaluation. He alleges that Dr. Petty is a board-certified child and adolescent psychiatrist. Plaintiff underwent an extensive evaluation for two or three hours. Dr. Petty's diagnoses included: opposition defiant disorder; dysthymia; personality traits that are sadistic with depressive and anti-social features; impulsion putting him at risk for homicidal and suicidal behaviors; drug and alcohol abuse; poor judgment; conduct disorder; and sullen disorder. He alleges that immediate and intensive mental health treatment was recommended. (*Id*. at 6.)

Plaintiff avers that these diagnoses were not disclosed or communicated to Plaintiff or his mother. (*Id*.)

On May 20, 1996, Plaintiff had not received any mental health treatment, and he was paroled and released back into society. (*Id*.) After about six months of abnormal behavior, including multiple attempts to commit suicide, Plaintiff had reached the age of 18, and was arrested and eventually convicted of murder. Plaintiff appears to assert that this crime was consistent with the destructive behavior diagnosed by Dr. Petty for which no treatment had been provided. He claims that the crime could have been avoided if he had received the recommended treatment. (*Id.* at 7.)

Plaintiff includes as an exhibit to his complaint the psychiatric evaluation from Dr. Petty from 1996, although its contents are not legible due to poor copying quality. (*Id.* at 25-30.) Also attached to his complaint is a portion of a December 24, 1998 competency psychiatric evaluation by a psychiatrist, whose name is not identified. The psychiatrist performed the evaluation in response to a court order by District Court Judge Michael L. Douglas, to determine whether Plaintiff was competent to assist his counsel in preparation for his defense.

Plaintiff addresses the statute of limitations issue in his complaint. Plaintiff says that information was communicated to him on April 25, 2019, and otherwise he had no reason or means to know or suspect that the violations consisted of injuries for which the Defendants could be held liable. He also says that his intellectual deficiencies contributed to the untimely filing.

To support these allegations, Plaintiff provides a declaration of David Howell, who is an inmate in NDOC, also housed at LCC with Plaintiff. Howell assisted Plaintiff with the section 1983 civil rights complaint. Howell states that he informed Plaintiff on April 25, 2019, of the possible civil liability and injury the State of Nevada and others might be responsible for as a result of deliberately disregarding and depriving Plaintiff of the recommended mental health treatment. He states that before he provided Plaintiff with this information, Plaintiff had no knowledge of the

possible injuries he sustained as a result of the State and County's conduct and his ability to hold them accountable in court. (*Id*. at 22-23.)

Plaintiff asserts the following claims against the State of Nevada: Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101; Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794; violations of Nevada Revised Statutes (NRS) 62A.360 and 62C.035(i); and civil rights claims under 42 U.S.C. § 1983, including the Fourteenth Amendment's Equal Protection and Due Process Clauses and the Eighth Amendment's prohibition against cruel and unusual punishment. He asserts claims for violation of the ADA and Section 504 of the RA against the State of Nevada Division of Child and Family Services and Clark County. Finally, as to Dr. Petty, he alleges claims for violations of the Equal Protection Clause, the Eighth Amendment's prohibition against cruel and unusual punishment, and violation of Section 504 of the RA. The court will address the claims asserted against each defendant, in turn.

**C. State of Nevada and Division of Child and Family Services**

In Count I, Plaintiff alleges that his rights under Title II of the ADA have been violated. He avers that the State of Nevada deliberately deprived him of his rights and protections as a mentally disabled person. He asserts that the State has a duty under the Federal Juvenile Delinquency Act, Chapter 403, to provide Plaintiff with adequate mental health care, and he was deprived of this. He also states that the State violated his rights under Nevada Revised Statutes (NRS) 62A.360, Title V and 62C.035(i) based on Plaintiff being a disabled citizen. He further asserts that the State violated the Equal Protection Clause of the Fourteenth Amendment by depriving Plaintiff of mental health care provided to state custody juveniles similarly situated to Plaintiff. He then alleges that the State violated his rights under the Eighth Amendment by subjecting him to cruel and unusual punishment. Finally, he claims the State violated his right to

due process under the Fourteenth Amendment to the United States Constitution based on the fact that Plaintiff was subject to the loss of life or the threat of loss of life. (*Id*. at 9.)

In Count II, Plaintiff alleges that the State of Nevada violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 based on the allegations of Count I. (*Id*. at 10.)

In Count IX, Plaintiff alleges that the Division of Child and Family Services violated the ADA based on the allegations in Count I. (*Id*. at 17.)

In Count X, Plaintiff alleges that Division of Child and Family Services violated his rights under Section 504 of the Rehabilitation Act based on the allegations in Count I. (*Id*. at 18.)

**1. 1983 Claims: Fourteenth Amendment Equal Protection and Due Process & Eighth Amendment Cruel and Unusual Punishment**

First, as to the equal protection, due process and cruel and unusual punishment claims brought under 42 U.S.C. § 1983, plaintiff must establish a "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Neither the State nor its agencies are persons for purposes of section 1983. *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *see also Savage v. Glendale Union High School*, 343 F.3d 1036, 1040 (9th Cir. 2003) ("It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court."). Therefore, these claims should be dismissed with prejudice as to the State of Nevada and the Division of Child and Family Services.

**2. ADA and RA**

The court will now address whether Plaintiff states claims under the ADA and RA against these defendants.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extent to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court's] cases have extended the Amendment's applicability to suits by citizens against their own States." *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority,' namely its § 5 Fourteenth Amendment powers." *Garrett*, 531 U.S. at 363 (citations omitted).

It is not entirely clear whether Congress has validly abrogated the State's sovereign immunity insofar as Plaintiff's ADA and RA claims are concerned. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003), *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 820, *as amended*, 271 F.3d 910 (9th Cir. 2001), *reh'g en banc denied*, 285 F.3d 1226 (9th Cir. 2002), *Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999), *Clark v. State of California,* 123 F.3d 1267, 1270 (9th Cir. 1997) (the Ninth Circuit held that Congress did abrogate the States' Eleventh Amendment immunity as to Title II of the ADA and Section 504 of the RA (at least when the accept federal funds for the RA)); *Garrett*, 531 U.S. at 360-61 (Supreme Court holds Congress did not validly abrogate States' Eleventh Amendment immunity with respect to Title I of the ADA, but left undecided whether States could be sued under Title II of the ADA); *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1171, *reh'g en banc denied*, 294 F.3d 1166 (9th Cir. 2002), *and cert. dismissed*, 538 U.S. 958 (2003) (Ninth Circuit confirms that *Garrett* addressed only Title I of the ADA, so the holdings in *Clark* and *Dare* were not overruled); *Tennessee v. Lane*, 541 U.S. 509

9

(2004) (holding Congress validly abrogated State's Eleventh Amendment immunity with respect to Title II ADA claims involving access to the courts, but declining to address the broad range of Title II's applications); *United States v. Georgia*, 546 U.S. 151 (2006) (holding Congress validly abrogated State immunity insofar as "Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment.").

Assuming, without deciding, that Plaintiff's allegations give rise to claims under Title II of the ADA and Section 504 of the RA with a valid abrogation of sovereign immunity, the court nevertheless finds Plaintiff fails to state a claim under either the ADA or R.A.

To state a claim under Title II of the ADA, a plaintiff must allege that: (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotation marks and citation omitted).

To bring a claim under the Rehabilitation Act, a plaintiff must similarly allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Plaintiff does not state a claim under the ADA or RA because the Ninth Circuit has held that a failure to treat the disability is, standing alone, "not actionable" because the ADA and RA "prohibit[ ] discrimination *because of* disability, not inadequate treatment for disability." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1021-22 (9th Cir. 2011), *overruled on other grounds by Castro v.*

*City of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he ADA does not create a remedy for medical malpractice.").

Here, Plaintiff's ADA and RA claims are based on his contention that the State and County did not provide him with recommended treatment. These are precisely the type of claims that are not actionable under *Simmons*. Therefore, these claims should be dismissed with prejudice.

**3. State Statutes**

Plaintiff also mentions Nevada Revised Statutes (NRS) 62A.360 and 62C.035(1). NRS 62A.360 is a legislative declaration stating that the title of the NRS governing Nevada's Juvenile Justice Code should be construed liberally to ensure juveniles receive appropriate care, but it does not provide a basis for civil liability. NRS 62C.035(1) is also a part of the Juvenile Justice Code and provides that children in custody must be screened to determine whether the juvenile is in need of mental health services. Again, this is part of the juvenile code and does not provide a basis for civil liability against the State.

**D. Clark County**

In Count III, Plaintiff alleges that Clark County violated his rights under the ADA based on the allegations in Count I. In Count IV, Plaintiff alleges that his rights under Section 504 of the RA were violated by Clark County based on the allegations in Count I.

Clark County does not have immunity from Title II claims. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 369 (2001). It would also not have immunity under Section 504 of the RA if it accepted federal funds. Nevertheless, Plaintiff still fails to state a claim under the ADA or RA for the reasons stated above.

///

///

**E. Dr. Petty**

In Count V, Plaintiff alleges that his rights under the Equal Protection Clause were violated by defendant Petty when Dr. Petty submitted to the court a psychiatric evaluation of Plaintiff that was not signed and so was invalidated, which she would not have done to similarly situated juveniles. In Count VI, Plaintiff alleges that defendant Petty violated Plaintiff's Eighth Amendment rights by submitting an "uncertified" and "invalidated" psychiatric evaluation report which resulted in cruel and unusual punishment being imposed on Plaintiff. (*Id*. at 14.) In Count VII, Plaintiff alleges that Dr. Petty violated his rights under the ADA based on the allegations set forth in Count I. (*Id*. at 15.) In Count VIII, Plaintiff alleges that Dr. Petty violated his rights under Section 504 of the RA based on the allegations in Count I. (*Id*. at 16.)

**1. Equal Protection Clause and Eighth Amendment**

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend XIV, § 1. It "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Plaintiff merely alleges that Dr. Petty failed to submit a signed evaluation, but this does not give rise to an equal protection claim. Therefore, this claim should be dismissed with prejudice.

Infliction of suffering on prisoners that is without penological justification violates the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Only "the unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A plaintiff must allege prison officials

acted with deliberate indifference to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Plaintiff merely alleges that Dr. Petty failed to sign a psychiatric evaluation report. This does not constitute deliberate indifference. Therefore, this claim should be dismissed with prejudice.

### 2. ADA and RA

Plaintiff does not allege conduct on the part of Petty that would be violative of the ADA. He merely alleges that she failed to sign the evaluation report. Amendment would not cure the deficiencies of these claims; therefore, they should be dismissed with prejudice.

### F. Conclusion

In sum, the court finds Plaintiff fails to state any claim upon which relief may be granted, and that amendment would be futile. Therefore, his complaint should be dismissed with prejudice. In light of the court's conclusions, it need not reach the allegations concerning the statute of limitations.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1); however, Plaintiff is required to pay, through NDOC, an initial partial filing fee in the amount of $ 17.50 within thirty days of the entry of any order adopting and accepting this Report and Recommendation. Thereafter, whenever his prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk should be directed to **SEND** a copy of an order

adopting and accepting this Report and Recommendation to the attention of **Chief of Inmate Services for the Nevada Department of Corrections**, P.O. Box 7011, Carson City, Nevada 89702.

(2) The complaint (ECF No. 1-1) should be **FILED**.

(3) The action should be **DISMISSED WITH PREJUDICE**.

The Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 30, 2019.

_____
William G. Cobb
United States Magistrate Judge